## Case No. 15,137.

### UNITED STATES v. FOSSAT.

[Hoff. Land Cas. 211.] [1]

Circuit Court, N. D. California. June Term, 1857. [2]

MEXICAN LAND GRANT—"MORE OR LESS"— BOUNDARIES.

The genuineness of the grant in this case not disputed. The ruling in Estudillo's Case [Case No. 15,058], that the words "poco mas ó menos" are operative for such fractional parts of a league as may be in excess of the quantity named in the grant, re-affirmed. Tho southern boundary of the land granted to Justo Larios declared to be the main Sierra, and not the low hills or lomas bajas.

[This was a claim by Charles Fossat for one league of land in Santa Clara county, confirmed by the board, and appealed by the United States.]

P. Della Torre, U. S. Atty.

A. P. Crittenden, for appellee.

HOFFMAN, District Judge. At the hearing of this case, the court entertaining no doubt upon the points presented, expressed verbally its opinion. At the suggestion of the attorney for the claimants, I have committed to writing the substance of the views then expressed. The genuineness of the grant was not disputed. The only questions discussed were as to the extent and the boundaries of the tract granted. The land is described in the grant as known by the name of the Capitancillos, bounded by the Sierra, by the Arroyo Seco on the side of the establishment of Santa Clara, and by the rancho of citizen José R. Berreyesa, which has for a boundary a line running from the junction of the Arroyo Seco and Arroyo De Los Alamitos southward to the Sierra, passing by the eastern "falda" of the small hill situated in the center of the Cañada. The third condition states that the land herein referred to is one league de ganado mayor, a little more or less, as is explained by the map accompanying the expediente.

It had been urged to the court in previous cases, that where the conditions of a grant mentioned the tract referred to as of so many leagues "a little more or less," the latter words should be rejected for uncertainty, and the quantity of land should be limited to the number of leagues mentioned. But this construction the court had refused to adopt. It was considered that the inquiry in these as in other grants was as to the intention of the grantor, and that the court could not attribute to him an intention to grant so many leagues and no more, in the face of his declaration that he intended to grant the specified quantity, a "little more or less." It is not necessary now to recapitulate the

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]
[2] [Reversed in 20 How. (61 U. S.) 413.]

various considerations upon which the court determined the question. It was of opinion that where the boundaries of the land granted were designated with reasonable certainty, the mention in the condition of a certain number of leagues, "more or less," as the quantity of land granted, should be considered as indicating an intention to grant the whole tract within the boundaries, provided the excess over and above the number of leagues mentioned was not so great as to indicate gross error or fraud; and that, as under the former government the ordinary unit of measurement was a league, the term "more or less" should at least be construed to embrace such fractional parts of a league as might be found within the boundaries, if no greater excess than some fraction of a league were found within them. It may deserve consideration whether such a mention of quantity should not be considered in all cases, except those of gross error or fraud, rather a conjectural estimate of the quantity previously granted than as a limitation of that quantity, and whether the grant should not be deemed, except in the cases referred to, a grant by metes and bounds, or by boundaries. It is enough, however, for the present to say that this court has decided that under the words "more or less" such fractional part of a league over and above the number of leagues mentioned will pass, as may be contained within the boundaries described in the grant. This point was not discussed at the hearing of this case, the district attorney being aware that it had already been passed upon by the court.

The questions more particularly debated were—1st, whether this court had any power by its decree to designate the boundaries of the tract confirmed to the claimant, or whether the language of the grant must be adopted, leaving the location of the boundaries and the identification of the natural objects called for to the surveyor general. Secondly, what were the boundaries called for.

As to the first point I entertain no doubt. The court is not, it is true, authorized by the act to designate the "extent, locality and boundaries" of the granted land. This, in the absence of a preliminary survey, would be impracticable; but the determination of the validity of a claim to a particular tract of land necessarily involves an inquiry, to a certain degree, into the boundaries or the extent of the tract, the validity of the title to which is in question. If the court decrees that the title of the claimant is valid to a piece of land, it should by its decree identify and designate that land, so that it may be known to what the claim is valid. But surely it is not only its right but its duty to construe by the aid of evidence and argument any ambiguity or uncertainty apparent on the face of the grant itself, and where the grant, as in this case, speaks of a "Sierra" as a boundary, to ascertain and declare what Sierra is meant, and to express in its decree

that it confirms a claim to a tract bounded by a particular and specified Sierra, and not by such Sierra as the surveyor general may consider to have been intended. The supreme court, in many of the cases brought up on appeal from this court, have entered fully and freely into the question of boundaries, and appear to have considered their determination not only as within their jurisdiction, but as an appropriate and important part of their duties.

The remaining question to be considered is, what boundaries were intended by the grantor. The only one of those mentioned, the identity of which was debated, is the southern boundary mentioned in the grant as "the Sierra." The point to be determined is—what natural object was meant. The evidence shows that the tract called Capitancillos is a valley lying along an Arroyo or brook; on the southerly side extends a range of low hills, running from east to west. At their eastern extremity, where they are intersected by the Alamitos, these hills attain considerable elevation, but they decline in height towards the west, where they reach and are turned by the Arroyo Seco. Behind this ridge or Cuchilla the main Sierra or mountain chain raises itself to a great height, and is separated from the ridge of "lomas bajas," already spoken of, by the two streams mentioned. These streams rise at an inconsiderable distance from each other, and flowing in opposite directions between the Sierra and the lomas bajas, they turn the eastern and western extremities of the latter and debouch into the plain. Upon the slopes of the ridge of low hills, as well towards the valley on the north as towards the streams behind it on the south, the best or most permanent grazing is to be found, and on this ridge are situated the valuable quicksilver mines, the existence of which gives to this inquiry its chief importance.

The question is—Is the Sierra mentioned in the grant the mountain chain to the south of the lomas bajas, or is it the lomas bajas themselves? If there were no other means of determining this question, the word "Sierra" itself, by its necessary import as well as from the evidence which shows to which of these natural objects it was in fact applied, would leave little room for doubt. The natural and ordinary meaning of the term clearly points us to a great mountain chain, rather than to a ridge of low hills parallel to but separated from it. The evidence is conclusive that such was the meaning and use of the word with reference to these particular natural objects, and that while the mountain range was known as the "Sierra," the ridge of low hills was known as the "Cuchilla la Mina de Luis Chaboya," or as the "Lomas Bajas." The expediente furnishes more conclusive evidence on this point. The tract is described, as we have seen, as of one "league, a little more or less, as is explained by the map accompanying the expediente." On this map is found

rudely delineated a mountain range, and this mountain range is inscribed "Sierra Del Encino," or "of the oak tree." The Sierra mentioned in the grant is therefore evidently the "Sierra Del Encino," for that is the only Sierra delineated on the map. The evidence discloses that there is on the main Sierra or mountain chain an oak tree of extraordinary proportions and striking appearance. Situated on a spur or ridge of the mountain, it is a conspicuous natural object from all parts of the valley and for many miles around. The photograph exhibited in court shows that its size and isolated situation are such as to strike the eye and arrest the attention of the most casual observer. Few who reside in that part of the country but are acquainted with the existence and situation of this tree, and it appears in the speech of many of the former inhabitants to have given a name to the Sierra on which it is situated. If then, as appears indisputable, the Sierra referred to in the grant be the "Sierra Del Encino," the Sierra on which this oak tree is situated must be the one.

A still further confirmation of these views is derived from the map accompanying the expediente of Berreyesa. The grant we are considering mentions as the eastern boundary of the tract granted, "the rancho of citizen José R. Berreyesa, which has for a boundary a line running from the junction of the Arroyo Seco and Arroyo De Los Alamitos southward to the Sierra," etc. This line thus dividing the two ranchos had previously been a subject of dispute between the colindantes or neighboring proprietors. It was finally settled, however, by the government before the grants were issued, and a dotted line, indicating the boundary agreed upon by the parties and fixed by the government, was made on the diseño of Berreyesa. This line is described in both grants in the same terms. That under consideration refers, as we have seen, to the rancho of Berreyesa as the boundary of the rancho of Justo Larios, and then describes the line as the boundary of Berreyesa's tract. The same inverted mode of description is used in the grant to Berreyesa. To determine what the boundary of Justo Larios' land is, we must, in literal compliance with the terms of the grant, ascertain the boundary of Berreyesa's land, and in ascertaining the latter we resort to the map on which the dotted line is marked. In Berreyesa's grant, as in that of Justo Larios, the line is described as extending to the "Sierra," and as the ranchos were coterminous and the eastern boundary of one is the western boundary of the other, the "Sierra" to which their common line of division extends must be the same. On recurring, then, to Berreyesa's map and the dotted line alluded to, all doubt is dissipated as to the range of mountains referred to. On this map two ranges of hills or mountains are rudely but unmistakably delineated. They are separated by a broad valley—far broader than that actually exist-

ing, but indicating by its exaggerated delineation the discrimination in the grantor's mind between the ridge of low hills and the Sierra, or mountain range behind it. The lower ridge is inscribed "Lomas Bajas," while the chain behind it and distinctly separated from it is inscribed "Sierra Azul," from the hue which the mountains assume at a distance. The dotted line which by the grant is to terminate at the "Sierra," is produced across the "Lomas Bajas," across the valley beyond them, and terminates at the "Sierra Azul." There can thus be no room for doubt that the Sierra intended was the main Sierra or mountain range, and as the western line of the land of Berreyesa extended to this range, the land of Justo Larios, which has the same line described in the same terms as its eastern boundary, must have the same extent. The Sierra referred to in Justo Larios' grant must necessarily be the same as that referred to in the grant of Berreyesa, and as to the latter, there can be, as we have seen, no question.

Other considerations in support of this view might be urged. I think it unnecessary. There seems to me no room for doubt that the Sierra referred to in the grant was the main Sierra described by the witnesses, and not the range of low hills which has been attempted to be assigned as a boundary.

[NOTE. From the decree entered in this case an appeal was taken by the United States to the supreme court, which rejected the words "more or less" in the grant, and confirmed the same for one league to be taken within the three designated boundaries, east, west, and south. The north boundary to be determined by quantity. 20 How. (61 U. S.) 413. The cause having been remanded, a continuance was granted the United States, in order to produce further testimony in the determination of the location of the boundaries, as designated in the grant. Case No. 15,138. Subsequently the location of the three designated boundaries was determined by the district court: the southern boundary, the one in dispute, being located as in the opinion above. Id. 15,139. From this decree an appeal was again taken to the supreme court by the United States. The appeal was upon motion dismissed, on the ground that the decree of the district court was not a final decree. 21 How. (62 U. S.) 446. At a later date, a survey was made, and returned into the district court, which approved the same, with modifications. Id. 15,140.]